UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
BIPINCHANDRA SHAH,                                :
                                                  :
                       Petitioner,                :
                                                  :        09 CV 6121(HB)
          - against -                             :
                                                  :        OPINION &
                                                  :        ORDER
COMMERCIAL BANK "OB'EDINENNYI                     :
INVESTITSIONNYI BANK",                            :
                                                  :
                       Respondent.                :
                                                  :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

  Petitioner Bipinchandra Shah ("Petitioner" or "Shah") moves for an order of attachment in aid of arbitration, seeking to attach up to $700,000, currently sitting in a Citibank account that belongs to Respondent Commercial Bank "Ob'Edinennyi Investitsionnyi Bank" ("Respondent" or "ObiBank"). For the reasons that follow, Petitioner's motion is DENIED.

FACTUAL BACKGROUND

  The present action stems from a larger dispute between Petitioner, Respondent and additional third parties over a loan agreement that soured. In 2006, Shah brought an arbitration action in the London Court of International Arbitration ("LCIA") against ObiBank and certain borrowers to obtain repayment plus interest on a $3 million loan made to these other parties and guaranteed by ObiBank. Decl. of Bipinchandra Shah in Supp. of Pet. ("Shah Decl."), ¶ 7-11. On April 7, 2008, the LCIA found ObiBank jointly and severably liable for the unpaid loans, and awarded Shah approximately $5.3 million. Shah Decl., Ex. D (*Shah v. RLI Partners, Ltd., et. al.*, LCIA Case No. 6827). After Respondent failed to pay Petitioner the arbitral award, Petitioner sought to collect his judgment. In August 2008, Shah obtained an order from a court in Austria that attached approximately $5.8 million in funds held in ObiBank accounts in that jurisdiction. *See* Shah Decl., ¶ 16, Kremslehner Decl. in Supp. of Mem. of Law. in Opp. to Pet., ¶¶ 8-9. Also in August 2008, Shah went before a court in this District, obtained an order of attachment of

ObiBank funds, and confirmed the arbitration judgment.  *See* Order Confirming and Modifying Order of Attachment, *Shah v. RLI Partners, Ltd., et al.,* No. 08 Civ. 446 (JES) (S.D.N.Y. Aug. 13, 2008).  The order attached any funds that currently or in the future entered bank accounts controlled by the garnishees up to the specified amount in the 2006 arbitral award.  *See id.*  As a result, approximately $1.1 million of ObiBank funds held at that time in a Citibank account were attached and transferred to the Registry of the Court.  Resp't's Mem. of Law. in Opp. of Pet. ("Resp't's Mem.") at 3.

On May 18, 2009, Petitioner commenced a second arbitration against Respondent before the LCIA.  Shah Decl. ¶ 3.  In this arbitration, which has yet to be resolved, Shah seeks to recover the costs of enforcing the 2006 arbitral award, which he alleges amounts to approximately $700,000.  *Id.* ¶ 24.  According to Petitioner, he recently learned that additional funds of approximately $1.8 million have been placed into the same Citibank account that was, and remains, attached for purposes of satisfying the 2006 arbitration award.  *Id.* ¶ 20.  Rather than seek an order to transfer these funds in further satisfaction of the 2006 award, Petitioner instituted the present action to ensure secured funds for the 2009 arbitration.  Shah requests a new and separate order of attachment against these funds, up to $700,000, in aid of the 2009 arbitration and potential judgment for costs associated with enforcing the 2006 arbitration judgment.

## DISCUSSION

Petitioner moves for an order of attachment in aid of arbitration pursuant to Rule 64 of the Federal Rules of Civil Procedure.  According to this rule, a district court may consider any remedy for seizing property to secure satisfaction of a potential judgment that is available under state law where the federal court is located.  *See* Fed.R.Civ.P. 64; *see also Empire Motor Show LLC v. Kruse, Inc.*, No. 05 Civ. 10611(HB), 2006 WL 2329379, at *1 (S.D.N.Y. Aug. 11, 2006).  New York law provides that a court "may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitration that is pending or that is to be commenced inside or outside this state…but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."  N.Y. C.P.L.R. § 7502(c); *see also SiVault Systems, Inc. v. Wondernet, Ltd.*, No. 05 Civ. 0890(RWS), 2005 WL 681457, at *3 (S.D.N.Y. Mar. 25, 2005).  That section also incorporates Article 62 of

New York law, related to attachments, and Article 63, related to injunctions. *Id.* Under Article 62, a plaintiff may obtain an order of attachment by showing evidence that (1) there is a cause of action; (2) they will probably succeed on the merits; (3) the award would be rendered ineffectual without the attachment[1]; and (4) the amount demanded exceeds all known counterclaims.[2] *See* N.Y.C.P.L.R. § 6212(a). Although the "rendered ineffectual without attachment" ground implies as much in this instance, the Second Circuit has stated that a District Court must determine that relief is "needed" when granting an order of attachment. *See Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006) ("In sum, then, a motion court presented with an application for an order of attachment must determine whether a statutory ground for attachment exists, whether the applicant has established a likelihood of success on the merits, and whether the remedy is needed to secure payment or obtain jurisdiction."). "The provisional remedy of attachment is a harsh remedy which should be construed strictly against those seeking to use it." *Elliott Assocs., L.P. v. Republic of Peru*, 948 F. Supp. 1203, 1211 (S.D.N.Y. 1996) (internal

---

[1] The statute technically states that a plaintiff must show "one or more grounds for attachment provided in section 6201." § 6212(a). Typically, this includes demonstrating "sinister maneuvers" or "fraudulent conduct" on the part of the respondent. *See* § 6201(3) (attachment may be granted where petitioner shows respondent acted "with intent to defraud his creditors or frustrate the enforcement of a judgment). However, § 7502, which specifically governs attachments in aid of arbitration, states that "the sole ground for the granting of the remedy" is that the "award…may be rendered ineffectual without" the attachment. § 7502(c). Federal and state courts in New York took this to mean that they should not consider the grounds in § 6201, and only consider whether the attachment would be "rendered ineffectual." *See, e.g., SiVault Systems, Inc. v. Wondernet, Ltd.*, No. 05 Civ. 0890(RWS), 2005 WL 681457, at *3 n.1 (S.D.N.Y. Mar. 25, 2005) (collecting cases); *Habitations Ltd. v. BKL Realty Sales Corp.*, 554 N.Y.S.2d 117 (N.Y. App. Div. 1990) ("[T]he standards generally applicable to attachments pursuant to CPLR 6201(3), such as sinister maneuvers or fraudulent conduct, are not required to be shown in an application pursuant to CPLR 7502(c)."). However, both the Second Circuit and the New York Appellate Division, First Department more recently suggested, in the preliminary injunction context, that this may not be true. *See SG Cowen Secs. Corp. v. Messih*, 224 F.3d 79, 83 (2d Cir. 2000) (stating that "to 'entertain' an application 'only upon' a particular 'ground' renders that ground an indispensable but not necessarily exclusive element of a successful application."); *Erber v. Catalyst Trading, LLC.*, 754 N.Y.S.2d 885 (N.Y. App. Div. 2003) ("Contrary to petitioner's argument, the criteria for provisional relief set forth in CPLR articles 62 and 63 are not relaxed when such relief is sought in aid of arbitration pursuant to CPLR 7502(c)."). I need not resolve this legal ambiguity because, as discussed *infra*, Petitioner fails to demonstrate the "indispensable" ground that the award would be ineffective without the attachment.

[2] At oral argument, there was some question as to whether, in addition to the four elements listed above, a court must consider traditional equitable criteria for injunctions, i.e. irreparable harm, likelihood of success, etc. As both parties correctly pointed out in supplementary letter briefs, consideration of these criteria is only necessary when a party seeks a preliminary injunction in aid of arbitration under § 7502 and Article 63, and not when they only seek an order of attachment under § 7502 and Article 62. In other words, Petitioner does not have to demonstrate success under the traditional equitable criteria in addition to the "rendered ineffectual" standard for attachment. *See, e.g., SG Cowen Secs. Corp.*, 224 F.3d at 81-82 (2d Cir. 2000) ("Article 63 incorporates the equitable criteria traditionally required for the granting of preliminary injunctive relief" when seeking a preliminary injunction in aid of arbitration under § 7502); *Founders Ins. Co. v. Everest Nat'l Ins. Co.,* 839 N.Y.S.2d 474, 475 (N.Y. App. Div. 2007) (finding that petitioner who sought an injunction under § 7502 did not meet the traditional equitable criteria, and separately determining that his motion to attach under § 7502 did not show that the award would be rendered ineffectual without attachment).

quotations and citations omitted).  Even if all of the statutory requirements are satisfied, "the issuance of relief remains in the discretion of the Court."  *See SiVault Systems*, 2005 WL 681457, at *3; *Elliot Assocs.*, 948 F.Supp. at 1211.

Shah's petition satisfies three of the four statutory requirements.  First, the 2009 arbitration relevant to the sought-for attachment is deemed by New York statute to be a "cause of action."  *See* N.Y.C.P.L.R. § 7502(c) ("arbitration shall be deemed an action for" [purposes of Article 62]).  Second, Petitioner has satisfactorily demonstrated that it is "probable" that he will succeed on the merits of his claim submitted to arbitration.  Shah notes that the same loan agreement for which he won an award in the 2006 arbitration also clearly includes a provision for Petitioner to recoup the costs he seeks in the 2009 arbitration.  *See* Pet'r's Mem. of Law. in Supp. of Pet. ("Pet'r's Mem.") at 7-8.  Respondent does not dispute Petitioner's likelihood of winning, but only whether the amount he seeks to attach is a realistic possible award.  *See* Resp't's Mem. at 8 ("attachment should be denied because he fails to demonstrate that he is likely to recover anything close to that amount.").  Although the amount is far from certain, Petitioner's description of the legal globe-trotting and investigation necessary to enforce the 2006 award, along with his counsel's representations at oral argument that costs already exceed "well over a half million dollars," *see* Hr'g Tr. at 6:20 (Aug. 11, 2009), are sufficient at this juncture to demonstrate that the sought-after amount is far from frivolous.  *Cf. Dongbu Exp. Co. v. Navios Corp.*, 944 F.Supp. 235, 237 (S.D.N.Y.1996) ("It is well-settled that in an attachment proceeding, the plaintiff need not prove its damages with exactitude…[b]ut the court must be satisfied that the plaintiff's claims are not frivolous.").  Finally, Petitioner asserts that there are no counterclaims by Respondent, which Respondent does not dispute, and so he satisfies the third requirement for attachment.

Although he meets three of the elements for attachment, Shah fails to demonstrate that the potential award for the 2009 arbitration would be "rendered ineffectual" without an order for attachment.  Both state and federal courts in New York have found sufficient evidence that an award may be ineffectual and an attachment needed where the Petitioner demonstrates Respondents potential insolvency, *SiVault Systems*, 2005 WL 681457, at *4, deliberate liquidation and/or transference of assets to another, *County Natwest Secs. Corp. USA v. Jesup, Josepthal & Co.,* 579 N.Y.S.2d 376 (N.Y. App. Div. 1992), that the company is a shell with no appreciable assets, historically failed to pay creditors, or has stated an intent to remove assets

from the jurisdiction, *Habitations Ltd. v. BKL Realty Sales Corp.*, 554 N.Y.S.2d 117 (N.Y. App. Div. 1990). By contrast, courts have declined to order an attachment where Petitioner fails to show that Respondent may spirit away the money or simply lacks sufficient assets and may have no money when the award is rendered. *See, e.g., Erickson v. Kidder Peabody & Co.*, 630 N.Y.S.2d 861 (N.Y. App. Div. 1995).

In this instance, Shah's evidence that the award will be uncollectable absent an attachment is that ObiBank did not pay the 2006 award upon demand, the funds in the account can be dissipated after the 2006 award is satisfied and the first attachment dissolved, and that the New York and Austrian accounts are the only funds they could uncover despite an extensive, global investigation. *See, e.g.,* Pet. ¶ 29; Pet'r's Mem. at 10. These claims are not without merit. The difficulty of enforcing the 2006 judgment and the alleged inability to find other accounts does suggest that Shah may have similar trouble if he wins the 2009 arbitration. However, the fact that it has been a challenge to enforce a prior judgment is not the same as evidence that it will be "rendered ineffectual" without the attachment. Although Shah only managed to discover two accounts with attachable funds, they collectively contain more than $6 million dollars. While the Citibank account laid fallow for an extended period after the initial attachment and transfer of $1.1 million, *see* Pet. ¶ 20; Shah Decl., Ex. F, Shah admits that Respondent *added* millions to the account despite their being an existing attachment, *see* Pet. ¶ 21. Other than Respondent's refusal to pay the arbitral award on demand, Shah provides no evidence that the bank has deliberately hidden its funds or attempted to evade enforcement by transferring assets. Shah also fails to show or even allege that ObiBank is financially insecure, in danger of insolvency, or otherwise lacks the assets to pay the judgment; indeed the $6 million Petitioner attached demonstrates quite the contrary. And although some of this money is likely to "dissipate" in that it will be used to satisfy the 2006 award, Shah provides no explanation as to why the remaining funds – which, from this record, appear to exceed the amount needed for the potential 2009 award – would suddenly disappear once the first award has been satisfied and the first attachment dissolved. While ObiBank may well have a plan to squirrel away the remaining U.S. funds after the first attachment concludes, Shah provides no evidence to that effect.

Petitioner won an approximately $5.3 million award in 2006 and believes he will win an additional award of around $700,000 in the 2009 arbitration. As a result of the 2006 award, he managed to attach over $6 million in assets between the Austrian and U.S. bank accounts. Shah himself has demonstrated that ObiBank likely has sufficient funds to cover all judgments. He does not provide any evidence that ObiBank will deliberately hide any remaining funds once the first attachment is dissolved, nor does he allege that the bank intends to transfer the funds to frustrate enforcement. Shah has highlighted his difficulties with ObiBank, and there is some indication of future challenges, however they appear to this Court as little more than conjecture on Plaintiffs' part. Attachments, indeed any provisional remedy, are hard to come by, and as such what the Court has been presented with here is not sufficient to demonstrate that the award may be rendered ineffectual without such an order.

## CONCLUSION

For the foregoing reasons, Shah's petition for an order of attachment in aid of arbitration is DENIED. The Clerk of Court is instructed to close this case and remove it from my docket.

**SO ORDERED**
March 9 , 2010
New York, New York

_____
U.S.D.J.